UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on June 18, 2024

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.** |
| vs. | : | **Grand Jury Original** |
| **DEEPAK JAIN,** | : | **18 U.S.C. § 1031** |
| Defendant. | : | **(Major Fraud Against the United States)** |
| | : | **18 U.S.C. § 1001(a)(3)** |
| | : | **(False Writing or Document)** |
| | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting, Causing an Act to be Done)** |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this Indictment:

### The Defendant, Entities, and Relevant Individuals

1. Defendant **DEEPAK JAIN** was the CEO of Company A, an information technology services company that provided cloud storage, fiber network, and data center services. Company A was headquartered in Beltsville, Maryland and operated a data center in Beltsville ("Beltsville Data Center"). Company A was awarded a contract to provide a data center for the U.S. Securities and Exchange Commission ("SEC") and housed the SEC's data at the Beltsville Data Center from 2012 through 2018.

2. Employee A was the vice president of Company A. Employee A is currently

deceased.

3. The SEC is a federal agency empowered by federal securities laws to protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation. It is headquartered in Washington, D.C.

4. Individual 1 was the CEO of Company B, an engineering consulting firm headquartered in Washington, D.C.

5. Uptime Council purported to be a company that inspected and audited data centers, and it purported to be headquartered in Washington, D.C.

### Background

6. In July 2012, the SEC issued a solicitation for data center colocation services, which called for the award of one or two contracts to provide data center services to the SEC. A requirement of the solicitation was that the provided data center(s) meet Tier III or greater standards as defined by the Telecommunications Industry Association ("TIA") Standards for Data Centers to ensure adequate data center reliability, redundancy, security, and availability.

7. The TIA-942 Standard specified requirements and guidelines for the design and installation of data centers. The TIA-942 Standard categorized data centers using four tiers based on the level of reliability (or redundancy), availability (or uptime), and security at the facility. A Tier IV data center had more redundancy, higher availability, and better security compared to a Tier III, II, or I data center.

### THE SCHEME TO DEFRAUD

#### Overview of the Scheme to Defraud

8. Beginning in or around October 2011 and continuing through in or around June 2022, in the District of Columbia and elsewhere, the defendant **DEEPAK JAIN**, along with others

known and unknown to the Grand Jury, knowingly executed, attempted to execute, and willfully caused to be executed a scheme and artifice with the intent to defraud the United States and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in any procurement of property and services as a prime contractor with the United States, where the value of such contract, subcontract, and any constituent part thereof, was $1,000,000 or more.

9. Specifically, **JAIN** created Uptime Council in order to deceive the SEC into thinking that Uptime Council was an independent auditor of data centers and was qualified to determine a data center's TIA-942 Standard Tier level. **JAIN** then drafted or caused to be drafted certification letters that falsely claimed that Individual 1 was the president of Uptime Council and that Uptime Council employees had visited the Beltsville Data Center and certified it as a Tier IV data center in accordance with TIA-942 standards. **JAIN** used these certification letters and this claim of certification in order to obtain the SEC contract and house the SEC's data at the Beltsville Data Center; to conceal, throughout the pendency of the contract, that Company A was not meeting contract requirements; and to bill and receive payments from the SEC for data storage that fell short of what the SEC paid to receive.

### Purposes of the Scheme and Artifice to Defraud

10. The purposes of the scheme were for **DEEPAK JAIN**, and others known and unknown to the Grand Jury, to (a) unlawfully enrich himself and Company A by claiming that the Beltsville Data Center had been independently audited and certified as a Tier IV data center, when it in fact had not been, in order to defraud the SEC into paying Company A for data storage at the Beltsville Data Center; and (b) conceal the true nature of Uptime Council in order to prevent the SEC from finding out that **JAIN** had created and caused to be created Uptime Council to

fraudulently convince the SEC to continue paying Company A for storing the SEC's data at the Beltsville Data Center.

### Manner and Means of the Scheme and Artifice to Defraud

11.     The manner and means of the scheme and artifice to defraud included, but were not limited to, the following:

    a.      To obtain data center contracts, **DEEPAK JAIN** created and caused to be created Uptime Council, which purported to inspect and audit data centers to determine their TIA-942 status. He claimed that Individual 1 was the President of Uptime Council, and he claimed that several other individuals worked for the company, when in fact, neither Individual 1 nor the other individuals worked for Uptime Council. Individual 1 and his company, Company B, had done work with Company A in the past, but none of that work involved inspecting or auditing data centers, and Individual 1 had conducted that work from his own offices in Washington, D.C. Individual 1 had never visited the Beltsville Data Center to determine its TIA-942 status.

    b.      In Company A's submission to the SEC seeking to be awarded the data center contract, **DEEPAK JAIN** provided and caused to be provided a letter purporting to be from Uptime Council and signed by Individual 1. The letter claimed that Uptime Council had inspected the Beltsville Data Center and determined that the Beltsville Data Center was Tier IV, the highest TIA-942 classification. In reality, neither Individual 1 nor any other person listed on the Uptime Council web site ever visited the Beltsville Data Center to determine its TIA-942 status. The Uptime Council website domain was purchased by **JAIN**, not Individual 1, and **JAIN** renewed the domain from 2011 through 2021.

c. When the SEC went to tour the Beltsville Data Center in advance of signing the contract with Company A, Employee A prevented the SEC from viewing important infrastructure that would have shown the Beltsville Data Center did not meet the Tier IV requirements.

d. After being awarded the contract, **DEEPAK JAIN** and others working at his direction continued to claim that the Beltsville Data Center was Tier IV certified when the SEC raised issues or problems with the Beltsville Data Center to **JAIN's** or Company A's attention.

e. **JAIN** claimed that he was giving the SEC a discount by charging Tier III prices for a Tier IV facility, when the facility did not actually meet the minimum standard required by the SEC.

f. Throughout the pendency of the contract between Company A and the SEC, the SEC experienced several issues with the Beltsville Data Center, including issues with security, cooling, and power, all of which were subjects of the TIA-942 standards. The SEC had to expend resources and money to alleviate these issues.

g. In 2017, when the SEC asked for a new certification because the previous fictitious certification had purportedly expired, **DEEPAK JAIN** drafted a letter on Uptime Council letterhead falsely representing that the Beltsville Data Center had been re-inspected and certifying that the Beltsville Data Center continued to be a Tier IV data center. The letter bore the signature of Individual 1, who had never visited the Beltsville Data Center to determine its TIA-942 status.

h. After the SEC declined to exercise its option to stay in the Beltsville Data Center in 2018, **DEEPAK JAIN** continued to claim that the Beltsville Data Center was

Tier IV certified in an attempt to obtain additional money from the SEC. In 2022, **JAIN** instructed other Company A employees to create and order plaques, through the year 2024, falsely stating that Uptime Council had certified the Beltsville Data Center as Tier IV.

i. From 2012 through 2018, the SEC paid approximately $10.7 million to Company A for the use of the Beltsville Data Center.

## COUNTS 1-6
### (Major Fraud Against the United States)
### [Title 18, United States Code, §§ 1031 and 2]

12. Paragraphs 1 through 11, including all subparagraphs, of this Indictment are realleged and incorporated by reference as if fully set forth here.

13. On or about the dates listed below, in the District of Columbia and elsewhere, the defendant,

**DEEPAK JAIN,**

Employee A, and others known and unknown to the Grand Jury, knowingly executed, attempted to execute, and willfully caused to be executed a scheme and artifice with the intent to defraud the United States and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in any contract and procurement of property and services as a prime contractor with the United States, where the value of such contract, subcontract, and any constituent part thereof, was $1,000,000 or more.

### Purposes of the Scheme and Artifice to Defraud

14. Paragraph 10 of this Indictment is realleged and reincorporated by reference as if fully set forth here as a description of the purposes of the scheme and artifice to defraud.

### Scheme and Artifice to Defraud

15. Paragraph 11, including all subparagraphs, of this Indictment is realleged and incorporated by reference as if fully set forth here as a description of the scheme and artifice to defraud.

### Execution of the Scheme

16. On or about the dates specified below, in the District of Columbia and elsewhere, defendant **DEEPAK JAIN** executed and attempted to execute the scheme and artifice to defraud as described above by:

| Count | Approx. Date | Execution |
|---|---|---|
| 1 | June 19, 2017 | Causing to be sent an email from Employee A to SEC Employee 1, attaching the Uptime Council letter drafted by **JAIN**, which falsely stated that the Beltsville Data Center was examined again by Uptime Council personnel in December 2016, and the Beltsville Data Center continued to be Tier IV certified. |
| 2 | September 7, 2017 | Sending and causing to be sent an email from **JAIN** to SEC Employee 2, attaching the Uptime Council letter drafted by **JAIN**, which falsely stated that the Beltsville Data Center was examined again by Uptime Council personnel in December 2016, and the Beltsville Data Center continued to be Tier IV certified. |
| 3 | April 12, 2018 | Sending and causing to be sent a letter from **JAIN** to SEC Employee 3, falsely asserting that Company A's Beltsville Data Center was Tier IV certified and attaching the Uptime Council letter drafted by **JAIN**. |
| 4 | July 11, 2018 | Sending and causing to be sent an email from **JAIN** to SEC Employee 3 with attached letter making false claims regarding Company A's Tier IV certification status. |

| 5 | August 8, 2018 | Causing to be sent an email from Company A to SEC Employee 4 with an attached August 2018 invoice for data center services that Company A provided to the SEC pursuant to the contract. |
| 6 | April 8, 2019 | Sending and causing to be sent an email from **JAIN** to SEC Employee 3 with attached letter asserting that the SEC owed Company A $992,952.96 for restoration of the Beltsville Data Center and for performance of services during the contract period. |

(All in violation of Title 18, United States Code, Sections 1031 & 2).

## COUNT 7
### (False Writing or Document)
### [18 U.S.C. §§ 1001(a)(3) and 2]

17. Paragraphs 1 through 7 and subparagraphs (a) through (i) of paragraph 11 of this Indictment are realleged and incorporated by reference as if fully set forth here.

18. On or about April 12, 2018, in the District of Columbia and elsewhere, the defendant,

**DEEPAK JAIN,**

did willfully and knowingly make and use a false writing and document, knowing the same to contain one or more materially false, fictitious, and fraudulent statements and entries in a matter within the jurisdiction of the executive branch of the Government of the United States, by sending and causing to be sent a letter from **JAIN** to SEC Employee 3 in the District of Columbia with an attached Uptime Council letter, which falsely and fictitiously asserted, among other things, that Company A's Beltsville Data Center was Tier IV certified.

(In violation of Title 18, United States Code, Sections 1001(a)(3) & 2)

A TRUE BILL

_____
FOREPERSON

GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

By: _____
ROBERT RYAN
VASANTH SRIDHARAN
TRIAL ATTORNEYS, FRAUD SECTION